IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

BRUNSWICK DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 CASE |
| | ) | No. 18-11292 |
| PATRICK ANDREW LANDON and | ) | |
| SANDRA LEA LANDON, | ) | |
| | ) | |
| Debtors. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| SELMA DEVELOPMENT, LLC, | ) | ADVERSARY |
| | ) | PROCEEDING |
| Plaintiff/Respondent, | ) | No. 19-01001 |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICK A. LANDON, | ) | |
| | ) | |
| Defendant/Movant. | ) | |
| | ) | |

**OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The matter before the Court is the Motion for Summary Judgment (A.P. ECF No. 18)[1] (the "Motion") by chapter 7 debtor Patrick A. Landon ("Defendant"). By Motion, Defendant seeks a determination that his indebtedness to Selma Development, LLC ("Plaintiff") is dischargeable under 11 U.S.C. § 523(a)(2)(B) and 11 U.S.C. § 523(a)(6). Upon

---

[1] Docket citations indicated with "A.P." refer to the docket in the present adversary proceeding. Otherwise, docket citations refer to the docket in Defendant's underlying bankruptcy case, No. 18-11292.

review of the record and for the reasons that follow, the Court finds that there is no genuine issue of material fact as to whether the subject debt is non-dischargeable under either subsection, and Defendant's Motion will therefore be granted.

## **PROCEDURAL POSTURE**

Defendant filed for bankruptcy with his wife (ECF No. 1) on September 7, 2018. On November 2, 2018, Plaintiff filed a proof of claim (Claim 3-1 at 2) for an unsecured debt in the amount of $1,500,000.00 based on a consent judgment entered in a state court proceeding. Plaintiff then filed its complaint (A.P. ECF No. 1) (the "Complaint") in this adversary proceeding on January 15, 2019, claiming that Defendant's debt to Plaintiff is non-dischargeable under 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(2)(B), and 11 U.S.C. § 523(a)(6). (Id. at 4, 5, 6.) Plaintiff and Defendant filed a consent order (A.P. ECF No. 12) dismissing the first count of the Complaint under 11 U.S.C. § 523(a)(2)(A) on March 6, 2019. Defendant then filed this Motion (A.P. ECF No. 18) requesting summary judgment on the two remaining counts on August 1, 2019 and filed a brief in support (A.P. ECF No. 19) (the "Brief") the same day. Plaintiff filed an amended response to Defendant's Motion (A.P. ECF No. 24) (the "Response") on September 19, 2019, and Defendant filed a reply brief (A.P. ECF No. 33) (the "Reply Brief") on November 4, 2019. The Court held a hearing on Defendant's Motion (the "Hearing") on November 14, 2019, at which Plaintiff and Defendant presented oral arguments. The Court took the matter under advisement at the conclusion of the Hearing and now issues this Order.

AO 72A
(Rev. 8/82)

## UNDISPUTED FACTS[2]

Defendant owns an interest in two entities which, at one point, operated several "Bojangles" franchise restaurants in Georgia and Alabama. (A.P. ECF No. 19 at 1.) Bojland Restaurant Group, LLC ("BRG") was a Bojangles franchisee and operator in Georgia, and Bojland Alabama Services, LLC ("BAS") was the same but operated in Alabama. (Id. at 1–2.) BRG was formed in March 2002 and ceased operations in November 2017 when it sold all its assets to an unaffiliated company for $2.4 million. (Id. at 1, 8; A.P. ECF No. 19-1 at 3.) BAS was formed in May 2016 and ceased operations in January 2018. (A.P. ECF No. 19 at 2.) BRG and BAS are no longer operational. (Id.)

Plaintiff, an Alabama limited liability company, is in the business of developing build-to-suit buildings and real estate parcels for use by businesses that operate fast food restaurants. (A.P. ECF No. 1 at 2.) Plaintiff's ownership is held by Craig Ripley ("Ripley") 50%, Matt Brooks ("Brooks") 25%, and Matt DeMeyers ("DeMeyers") 25%. (A.P. ECF No. 19 at 3.) Plaintiff built, developed, and leased a property in Alabama to BAS that BAS operated as a Bojangles restaurant. The property relevant to this case was located at 1794 Highway 14, Selma, Alabama (A.P. ECF No. 19-2 at 93) (the "Selma Bojangles"). (A.P. ECF No. 1 at 3; A.P. ECF No. 19 at 3.) Ripley, Brooks, and DeMeyers also own an identical

---

[2] Plaintiff does not cite to any "particular parts of materials in the record" to support its factual assertions as required by Federal Rule of Civil Procedure 56(c)(1) (see A.P. ECF No. 24 at 1–3), so the Court deems the properly-supported assertions of facts in Defendant's Brief in Support of Defendant's Motion for Summary Judgment (A.P. ECF No. 19 at 1–9) as undisputed for the purposes of the Motion. See Fed. R. Civ. P. 56(e)(2); Fed. R. Bankr. P. 7056 (making Fed. R. Civ. P. 56 applicable in bankruptcy proceedings); S.D. Ga. LR 56.1.

entity named Zelda Development, LLC ("Zelda"), which built and developed the property located at 1425 Ann Street, Montgomery, Alabama (A.P. ECF No. 19-2 at 65) (the "Montgomery Bojangles") that was also leased to and operated as a Bojangles by BAS. (A.P. ECF No. 19 at 3.)[3]

In January 2016, DeMeyers cold called Defendant and expressed his interest in acting as developer and landlord for Defendant's restaurants in Alabama.  (A.P. ECF No. 19-3 at 16–17.)  At some point, Defendant provided several financial documents to Plaintiff.  (Id. at 56, 71.)  These documents included a personal financial statement for Defendant and his wife dated December 22, 2015 (A.P. ECF No. 19-2 at 148–49) (the "2015 PFS"), a profit and loss statement for BRG for the period of December 2014 through October 2015 (Id. at 142–44) (the "2015 P&L"), a profit and loss statement for BRG for the period of October 2015 through September 2016 (Id. at 145) (the "2016 P&L"), and a profit and loss statement for BRG for the period of May 23, 2017 through May 21, 2017 (Id. at 146-47) (the "2017 P&L"; collectively, the 2015 PFS, 2015 P&L, 2016 P&L, and 2017 P&L are referred to herein as the "Financial Documents").

On April 1, 2017, BAS entered into a lease with Plaintiff (the "Selma Lease") for the Selma Bojangles with Defendant as guarantor.[4]  (A.P. ECF No. 1 at 3; A.P. ECF No. 19 at

---

[3] Zelda filed a separate adversary complaint against Defendant, and Defendant moved for summary judgment in that case as well.  See Zelda Dev., LLC v. Landon (In re Landon), Ch. 7 Case No. 18-11292, Adv. No. 19-01002 (Bankr. S.D. Ga. filed Jan. 15, 2019).

[4] On or about December 20, 2016, BAS entered into a lease with Zelda for the Montgomery Bojangles with Defendant as guarantor; construction began shortly thereafter.  (A.P. ECF No. 19 at 6.)  The Montgomery Bojangles opened on October 3, 2017.  (Id.)

6.)  Plaintiff began construction on the Selma Bojangles shortly thereafter.  (A.P. ECF No. 19 at 6.)  On November 4, 2017, BAS opened the Selma Bojangles.  (Id.)

The Alabama market was not as profitable as anticipated for BAS.[5]  (Id. at 7.)  BAS began to experience cash flow issues and was unable to pay its bills and fulfill its obligations.  (Id.)  DeMeyers wrote an email to Defendant on November 15, 2017, stating: "I know that you are not thrilled with the sales in the Montgomery market but we are confident your group will get the sales headed in the correct direction."  (A.P. ECF No. 19-1 at 12.)  On December 14, 2017, Defendant emailed DeMeyers, informing DeMeyers that Bojangles corporate would not take over the leases on BAS's Alabama Bojangles locations.  (Id. at 13.)  On January 12, 2018, BAS's bank account was frozen.  (A.P. ECF No. 19 at 7.)  On January 22, 2018, BAS received a letter from Plaintiff and Zelda terminating the leases for the Selma and Montgomery Bojangles and requesting that Defendant turn over the property locations to Plaintiff and Zelda, respectively.  (Id. at 8.)

Prior to Defendant's bankruptcy, Plaintiff sued Defendant and BAS in state court for damages under the Selma Lease.  (Claim 3-1 at 4.)  A consent order was entered in the state court case, stipulating that BAS was liable to Plaintiff in the amount of $1,500,000.00 and such liability would be joint and several with any judgment granted against

---

[5] BAS opened a total of four Bojangles restaurants in Alabama.  Prior to its dealings with Plaintiff, BAS entered into lease agreements with developers not related to Plaintiff for two other Alabama locations.  Those other locations opened in October 2016 and February 2017.  (A.P. ECF No. 19 at 5.)

Defendant.  (Id.)  This state court judgment is the basis of Plaintiff's unsecured claim and its claims in this adversary proceeding.

## CONCLUSIONS OF LAW

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law identifies which facts are material, and factual disputes that are irrelevant or unnecessary will not be counted.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where "a reasonable jury could return a verdict for the nonmoving party."  Id.  A court must enter summary judgment if a set of undisputed facts permits the court to rule on a dispositive issue, even if another set of facts is disputed.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

The moving party "has the burden of showing that there is no genuine issue of fact." Anderson, 477 U.S. at 256.  The nonmoving party must support its assertion that there is a genuine issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  The nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment," even where "the evidence is likely to be within the possession of the [moving party], as long as the [nonmoving party] had a full opportunity to conduct discovery."  Anderson, 477 U.S. at 257.  If the nonmoving party fails to adequately support an assertion of fact, the court may grant summary

judgment if the motion and supporting materials show that the movant is entitled to it. Fed. R. Civ. P. at 56(e)(3).

When deciding on a motion for summary judgment, courts must review the evidence "in the light most favorable to the non-moving party" and draw all justifiable inferences in the nonmovant's favor.  Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993); Anderson, 477 U.S. at 255.

## II.   SUMMARY JUDGMENT FOR DEFENDANT IS APPROPRIATE

For the reasons that follow, Defendant has demonstrated that there is no genuine issue of material fact as to either of Plaintiff's claims, and summary judgment for Defendant is therefore appropriate.

### A.   11 U.S.C. § 523(a)(2)(B)

In count two of its Complaint, Plaintiff asserts that the debt Defendant owes is non-dischargeable under 11 U.S.C. § 523(a)(2)(B).[6]  (A.P. ECF No. 1 at 5.)  Pursuant to 11 U.S.C. § 523(a)(2)(B), an individual debtor may not be discharged from any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (B) use of a statement in writing—
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;

---

[6] In support of its section 523(a)(2)(B) claim, Plaintiff's Complaint alleges, among other things, that Defendant's Financial Documents are materially false writings respecting Defendant's financial condition. (A.P. ECF No. 1 at 5.)  Plaintiff also asserts that it relied upon these Financial Documents when deciding to enter into the Selma Lease with Defendant, that Defendant knew the Financial Documents were false, and that Defendant knew or should have known that Plaintiff would act in reliance upon the documents.  (Id.)

AO 72A
(Rev. 8/82)

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive . . . .

11 U.S.C. § 523(a)(2)(B).  For a debt to be declared exempt from discharge under section 523(a)(2)(B), the plaintiff must establish by a preponderance of the evidence that:  (1) the debt was obtained by use of a written statement; (2) such written statement was materially false; (3) the written statement concerned the debtor's financial condition; (4) the plaintiff reasonably relied on such written statement; and (5) the debtor published the written statement with the intent to deceive.  Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 304 (11th Cir. 1994).  If the plaintiff fails to meet its burden with respect to any of these elements, the debt is dischargeable.  Id.

Defendant does not dispute that the Financial Documents[7] are statements in writing respecting Defendant's or an insider's financial condition.  Therefore, the remaining factors to be considered in the section 523(a)(2)(B) analysis are (1) material falsity, (2) reasonable reliance, and (3) intent to deceive.  Defendant argues that summary judgment is proper

---

[7]  The Court notes that in count two of the Complaint, Plaintiff asserted that the Selma Lease was a materially false writing under 11 U.S.C. § 523(a)(2)(B).  (A.P. ECF No. 1 at 6.)  However, the Selma Lease did not contain any information about Defendant's financial condition, and Plaintiff conceded at the Hearing that the lease did not contain any representations or warranties regarding the Defendant's financial condition.  The Selma Lease therefore does not constitute a written statement of Defendant's or an insider's financial condition and will not be considered by the Court in its analysis under section 523(a)(2)(B).  Additionally, the Court notes Plaintiff asserted that the 2017 P&L was a materially false writing under section 523(a)(2)(B).  (A.P. ECF No. 1 at 2.)  However, the Court will not consider the 2017 P&L as a document upon which Plaintiff could have relied when entering into the Selma Lease because the 2017 P&L was created in May 2017, which was after the parties entered into the Selma Lease in April 2017.  (A.P. ECF No. 19-2 at 146.)

because Plaintiff has failed to identify specific facts in the record that show a genuine issue for trial.  (A.P. ECF No. 33 at 4.)

### 1.    Material Falsity

As an initial matter, Plaintiff bears the burden of proving that the Financial Documents were "materially false."  11 U.S.C. § 523(a)(2)(B)(i).   "A written statement is materially false if it 'paints a substantially untruthful picture of financial conditions by misrepresenting information of the type that would normally affect the decision to grant credit.'"  Hurston v. Anzo (In re Anzo), 547 B.R. 454, 466 (Bankr. N.D. Ga. 2016) (quoting Delta Cmty. Credit Union v. Greene (In re Greene), No. 13-5326, 2013 WL 6911376, at *2 (Bankr. N.D. Ga. Dec. 24, 2013)).  "A party demonstrates that a writing is materially false by evidence that the writing was false at the time it was created, the falsity was material in amount, and the falsity was material in the effect it had on the creditor."  Bank of N. Ga. v. McDowell (In re McDowell), 497 B.R. 363, 369 (Bankr. N.D. Ga. 2013) (internal quotation marks omitted) (quoting Agribank, FCB v. Gordon (In re Gordon), 277 B.R. 805, 810 (Bankr. M.D. Ga. 2001)).

Defendant asserts that there were no inaccuracies or misrepresentations in the Financial Documents and argues that Plaintiff lacks evidence to establish that the Financial Documents contain material misrepresentations.  (A.P. ECF No. 19 at 11–13.)  Defendant contends that Plaintiff's assertions of falsity are "based on speculation and conjecture." (A.P. ECF No. 19 at 12.)  Plaintiff does not specify in either the Complaint or its Response

AO 72A
(Rev. 8/82)

exactly what information in the Financial Documents it alleges to be false.[8]  However, after deposing DeMeyers, Defendant discovered that DeMeyers specifically believes the valuation of BRG in the 2015 PFS to be inaccurate.[9]  (A.P. ECF No. 19-3 at 68–69.) DeMeyers's reason for this is the fact that BRG sold almost two years later for a lesser price than the value listed in the 2015 PFS.  (Id. at 69.)  Defendant asserts that the value of BRG as reflected in the 2015 PFS was accurate as of December 22, 2015 (A.P. ECF No. 33 at 5) and argues that summary judgment in favor of Defendant is appropriate because Plaintiff has not produced any of its own evidence as to the value of BRG in December 2015 and has not identified any expert witnesses who can do so.  (A.P. ECF No. 19 at 13.)

In its Response, Plaintiff cites to no evidence in the record demonstrating an issue of fact as to the material falsity of the Financial Documents.[10]  At the Hearing, Plaintiff

---

[8] The "facts" section of the Complaint recites the following values from the Financial Documents:

> (1) Debtor and his wife had total assets of over $9,500,000.00 and a net worth of at least $4,800,000.00, (2) that [BRG] had total revenues of over $8,200,000.00 and net income of over $603,000.00 for the period of December 29, 2014 through October 25, 2015, (3) that [BRG] had total revenues of over $13,000,000.00 and net income of over $575,000.00 for the period October 2015 through September 2016, and (4) that [BRG] had total revenues of over $13,200,000.00 and net income of over $821,103.00 for the period May 23, 2016 through May 21, 2017.

(A.P. ECF No. 1 at 2-3.)

[9] Plaintiff acknowledged at the Hearing that the numbers included in the 2015 and 2016 P&Ls support the valuation of BRG in the 2015 PFS.  Because the value of BRG listed in the 2015 PFS was derived from the information reflected in both the 2015 P&L and 2016 P&L, each reference in this Order to the value or valuation of BRG includes the value of BRG as listed in the 2015 PFS as well as the information relevant to such value as included in the 2015 P&L and/or 2016 P&L.

[10] In its Response, Plaintiff alleged that "Defendant's net worth declined by the amount of $5,810,824.00 from the period of December 2015 to January 2018, which further suggests to Plaintiff that Defendant made egregious and material misrepresentations of fact to Plaintiff."  (A.P. ECF No. 24 at 4–5.)  However,

asserted that the valuation of BRG in Defendant's 2015 PFS is false.  Plaintiff supported

this argument, like DeMeyers did in his deposition, with the fact that Defendant sold BRG

in November 2017 for a lesser price than the value Defendant listed in the 2015 PFS.  (Id.)

The 2015 PFS lists $7,958,646.00 as the value of BRG as of December 22, 2015.[11]  (A.P.

ECF No. 19-2 at 148.)   BRG sold all its assets on or about November 13, 2017 to an

unaffiliated company for $2.4 million.  (A.P. ECF No. 19-1 at 3.)  Plaintiff has not provided

any independent valuations to contest those contained in the Financial Documents.  In

particular, Plaintiff has no independent evidence of the value of BRG, as of December 22,

2015, that indicates inaccuracies in the 2015 PFS or any of the other Financial Documents.

Instead, Plaintiff asks this Court to infer that the Financial Documents were materially false

with respect to BRG's valuation based solely on the fact that BRG sold for roughly one-

third of its value almost two years after the date of the 2015 PFS.

However, even when viewing the record in the light most favorable to Plaintiff, the

inference that Plaintiff asks the Court to make is not justifiable.  A business lost two thirds

---

Defendant's 2018 personal financial statement has not been provided to the Court, and Plaintiff has not cited to any part of the record that discloses Defendant's net worth in January 2018.  See Fed. R. Civ. P. 56(c)(1)(A) (requiring the nonmoving party to support its assertions by "citing to particular parts of materials in the record").

[11] By affidavit, Defendant states that he determined the value of BRG as listed on the 2015 PFS by taking a "multiplier" he received from the senior vice president of franchise at Bojangles corporate and multiplying it by BRG's earnings before interest, taxes, depreciation, and amortization ("EBITDA").  (A.P. ECF No. 33-1 at 2.)  When deposed, DeMeyers agreed that a multiplier times the company's EBITDA is the correct way to determine valuation of a fast food or quick service business.  (A.P. ECF No. 19-3 at 73).

of its value over the course of twenty-two months[12]—given the timing between the 2015 PFS and the sale of BRG, this loss in value alone is insufficient for a finding of material falsity as to Defendant's valuation of BRG.  See Frontier Bank v. Davenport (In re Davenport), No. 10-8009-DHW, 2011 WL 2533087, at *11 (Bankr. M.D. Ala. June 24, 2011) (refusing to find that debtor's valuations of his closely-held companies were false even though "they changed dramatically from one statement to another" partially because "[t]here is some subjectivity in valuing a closely-held company because its shares are not publicly traded"); Buckeye Retirement Co. v. Bishop (In re Bishop), 420 B.R. 841, 855 (Bankr. N.D. Ala. 2009) (refusing to find that higher valuations of property in a debtor's statement of financial condition from 2002 constituted evidence that debtor made a false oath when listing lower valuations of that property in his petition three years later); Bank of Atlanta v. Jones (In re Jones), 197 B.R. 949, 960 (Bankr. M.D. Ga. 1996) (declining to infer material falsity solely from the difference between the value of assets as listed in debtor's financial statement and the bankruptcy petition filed thirteen months later).

Plaintiff has failed to produce any evidence that supports its allegation that the Financial Documents were inaccurate or false.  Almost two years passed between the

---

[12] By affidavit, Defendant states that after December 2015, BRG added four new restaurants in the Augusta, Georgia market, which resulted in the acquisition of more debt for BRG and reduced its overall value.  (A.P. ECF No. 33-1 at 2.)  Defendant also states that in May 2017 he received and orally accepted a letter of intent from the eventual buyer of BRG that offered to buy BRG's assets for $3.4 million.  (A.P. ECF No. 19-1 at 3.) However, Defendant states that he had to reduce the sale price by over $1 million due to alleged interference from Bojangles corporate.  (Id.)  Defendant believes he has a legal claim against Bojangles corporate for interference with the sale of BRG and has listed this potential cause of action in his bankruptcy schedules. (Id.; ECF No. 65 at 8.)

compilation of the 2015 PFS and the 2017 sale of BRG's assets; the relationship between those two values is too remote to support an inference that the relevant Financial Documents were inaccurate or false. Additionally, because there is no evidence of any falsehood as of the time the Financial Documents were created, the Court cannot assign a reasonable dollar amount to Debtor's alleged falsehoods and is unable to determine materiality. See In re Jones, 197 B.R at 960 ("Materiality is determined in part by the size of the discrepancy." (citing Ins. Co. of N. Am. v. Cohn (In re Cohn), 54 F.3d 1108 (3d Cir. 1995))).

Because Plaintiff would have the burden of proving a material falsehood at trial and it has not established the existence of this essential element, summary judgment as to Plaintiff's section 523(a)(2)(B) claim must be granted in favor of Defendant. See Celotex Corp., 477 U.S. at 323 (where the party with the burden of proof does not, after adequate time for discovery, make a showing sufficient to establish the existence of an element essential to its case, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the case necessarily renders all other facts immaterial); Allen v. Morrow (In re Morrow), 508 B.R. 514, 525 (Bankr. N.D. Ga. 2014) (granting summary judgment for the defendant/debtor on an 11 U.S.C. § 523(a)(2)(B) claim where the plaintiff failed to show that the relevant statement represented defendant's financial condition); Dunn v. Whyte (In re Whyte), 487 B.R. 578, 586 (Bankr. N.D. Ga. 2013) (same).

## 2.   Reasonable Reliance

Even if Plaintiff had shown material falsity in the Financial Documents, 11 U.S.C. § 523(a)(2)(B)(iii) still requires that Plaintiff reasonably relied upon the Financial Documents. Reasonable reliance is a "fact intensive analysis," and factors that may affect the reasonableness of a creditor's reliance include:

> whether the creditor had a close personal relationship or friendship with the debtor; (2) whether there had been previous business dealings with debtor that gave rise to a relationship of trust; (3) whether the debt was incurred for personal or commercial reasons; (4) whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and (5) whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

Pentagon Fed. Credit Union v. Purse (In re Purse), No. 14-01020, 2015 WL 5042222, at *7 (Bankr. S.D. Ga. Aug. 25, 2015) (internal quotation marks omitted) (quoting In re Jones, 197 B.R. at 962).

Plaintiff alleges in its Complaint that it acted "to [its] detriment upon [Defendant's representations that the Financial Documents were true] inasmuch as it expended its own funds in constructing and developing a single, limited use building for which there appears to be no tenant available." (A.P. ECF No. 1 at 4, 6.) Plaintiff also alleges that it entered the Selma Lease in reliance upon Defendant's representations that Defendant intended to and was able to perform his obligations under the Selma Lease. (Id. at 5.)

Defendant disputes the reasonableness of Plaintiff's reliance upon the Financial Documents. (A.P. ECF No. 19 at 14–15.) Defendant argues that Plaintiff failed to

adequately investigate the valuation of BRG before entering into the Selma Lease, pointing out that although the 2015 PFS was prepared in December 2015, Plaintiff did not receive the PFS until November 2016.  (Id. at 14; A.P. ECF No. 19-3 at 107.)

In its Response, Plaintiff asserts that it had no other way to value BRG than to rely on Defendant's representations, and so its reliance on those representations was reasonable.  (A.P. ECF No. 24 at 5.)  In support of this, Plaintiff cites Davenport v. Frontier Bank, No. 3:11-cv-642-MEF, 2012 WL 2590828 (M.D. Ala. July 5, 2012), in which an Alabama court found that the creditor reasonably relied upon financial statements the debtor submitted because "[n]ot only did the [creditor] have no other way to value the companies than to rely on [the debtor's] representations, but it also likely knew that the value of a business can ebb and flow over time."  Id. at *7.

Even if the Court accepts Plaintiff's assertion that it could not value BRG independent of Defendant's representations,[13]  Plaintiff's reliance was not reasonable because the Financial Documents were stale by the time the parties entered into the Selma Lease.  "Courts have found reliance to be unreasonable when a creditor relies on a financial statement that becomes stale by the passage of time."  In re Anzo, 547 B.R. at 467; see, e.g., First Am. Bank of Indian River Cty. v. Schraw (In re Schraw), 136 B.R. 301, 304 (Bankr. S.D. Fla. 1992) ("Where a bank relies on a stale financial statement and never inquires as to whether the statements actually reflect the debtor's current financial situation, the bank

---

[13] This Order makes no findings or conclusions as to whether Plaintiff is able to independently value BRG.

fails to show reasonable reliance."); Agribank, FCB v. Gordon (In re Gordon), 277 B.R. 805, 811 (Bankr. M.D. Ga. 2001) (holding that reliance was unreasonable where three and a half months lapsed between the writing of the financial statement and its submission to the creditor). Moreover, "[e]ven if all other factors merit a finding a reasonableness, such a finding may be precluded merely because a creditor relied on stale financial information." In re Strength, 562 B.R. 799, 808 (Bankr. M.D. Ala. 2016) (citing In re Gordon, 277 B.R. at 811).

The 2015 PFS is dated December 22, 2015. By the time the 2015 PFS was delivered to Plaintiff in November 2016 (ECF No. 19-3 at 107), the information therein was already more than ten months old. Additionally, by the time the Selma Lease was executed, the Financial Documents aged another four months.[14] However, during all those months, Plaintiff failed to take any steps to determine the continued accuracy of the Financial Documents or any changes in the value of BRG. Changes were likely to have occurred during those months, and such changes could have altered the accuracy of the Financial Documents. As a result, the Financial Documents, on their face, lacked current information, and a reasonable creditor would not have relied on such stale financial data. See In re Gordon, 277 B.R. at 811.

---

[14] At the time the Selma Lease was executed, the 2015 PFS was 15 months old, the 2015 P&L was 17 months old, and the 2016 P&L was 6 months old. (A.P. ECF No. 1 at 3; A.P. ECF No. 19 at 6; A.P. ECF No. 19-2 at 142, 145, 148.)

It is true that an oral reaffirmation that the borrower's financial condition has not changed since the creation of the financial statement may cure staleness.  See First Commercial Bank v. Robinson (In re Robinson), 192 B.R. 569, 577 (Bankr. N.D. Ala. 1996). However, there is no evidence in the record before the Court that Defendant orally reaffirmed or otherwise reaffirmed the value of BRG or any of the Financial Documents.

### 3.    Intent to Deceive

Finally, Plaintiff must prove that Defendant published the written statement with the intent to deceive.  11 U.S.C. § 523(a)(2)(B)(iv).  Intent to deceive may be inferred by "the totality of the circumstances, including the recklessness of a debtor's behavior."  In re Miller, 39 F.3d 301, 305 (11th Cir. 1994).  But "[a] debtor's honest belief that a debt would be repaid in the future, even if in hindsight found to have been very unrealistic, negates any fraudulent intent."  Navy Fed. Credit Union v. Purse (In re Purse), 537 B.R. 28, 37 (Bankr. S.D. Ga. 2015).  Plaintiff alleges in its Complaint that "at the time [Defendant] entered into the Selma Lease, . . . [Defendant] knew or should have known that neither [Defendant] nor [BAS] had any intent or feasible way to perform its obligations."  (A.P. ECF No. 1 at 5, 6.)

Defendant argues that there are no genuine issues of material fact as to intent because Plaintiff has not provided any evidence of Defendant's intent to deceive.  (A.P. ECF No. 19 at 15.)   In its Response, Plaintiff contends that "[g]enerally, a debtor's fraudulent intent cannot be determined on summary judgment" and "courts have found

that a reckless disregard for the truth can provide the basis to infer an intent to deceive." (A.P. ECF No. 24 at 6 (internal quotation marks omitted) (quoting In re Purse, 537 B.R. at 37).)  Plaintiff argues that "Defendant's conduct evidences that [the Financial Documents] were presented with the intent to deceive Plaintiff, to intentionally cause harm and injury to Plaintiff, and to encourage Plaintiff not to sue for damages."  (A.P. ECF No. 24 at 6.)[15]

Although intent is a fact intensive analysis, "it is true that under certain facts and circumstances summary judgment *is* appropriate."  In re Purse, 537 B.R. at 37 (emphasis added); see Walton v. Williamson (In re Williamson), No. 11-60755, 2013 WL 441418, at *5 (Bankr. S.D. Ga. Feb. 1, 2013) ("[I]n some instances, when the circumstances provide enough evidence of fraudulent intent, courts have found that denial of discharge is appropriate on summary judgment.").  Examples abound where courts grant debtor/defendants' motions for summary judgment in dischargeability cases where fraudulent intent is an essential element.  See, e.g., SmithKline Beecham Corp. v. Lam (In re Lam), No. 06-68805-MGD, 2008 WL 7842072, at *4 (Bankr. N.D. Ga. Mar. 27, 2008) (granting debtor/defendant's motion for summary judgment as to 11 U.S.C. §§ 523(a)(4) and (6) claims where "Plaintiff submit[ted] no facts which would support the requisite intent element"); Schrader v. Kwang Cha Yi (In re Kwang Cha Yi), No. 09-83847-WLH, 2011 WL 1364229, at *8 (Bankr. N.D. Ga. Apr. 4, 2011) (granting debtor/defendant's motion

---

[15] Plaintiff's Response includes several new factual allegations to show Defendant's intent but fails to cite to the record for these facts.  (A.P. ECF No. 24 at 5–7.)  These allegations are unsupported by the record and the Court will therefore not consider them.  See Fed. R. Civ. P. 56(c)(1)(A).

for summary judgment as to 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), and (a)(4) claims because plaintiff's allegation that "it is highly probably that [d]ebtor may have embezzled the Corporation's assets" did not constitute fact, "but [was] only speculation").

Plaintiff's allegations of fraudulent intent do not automatically save its claim from disposition on summary judgment. If that were the case, no debtor/defendant would ever prevail on a motion for summary judgment in a case where intent is an essential element. Plaintiff was still obliged to come forward with affirmative evidence from which the Court could reasonably infer the requisite intent but failed to do so. As such, Plaintiff's conclusory allegations of intent are insufficient, and intent to deceive cannot be inferred from the facts in the record.

In sum, with respect to the 11 U.S.C. § 523(a)(2)(B) claim, Defendant has demonstrated that there is no genuine issue of material fact as to whether the Financial Documents were materially false, whether Plaintiff reasonably relied upon the Financial Documents, and whether Defendant published the Financial Documents with the required intent to deceive. In turn, Plaintiff failed to produce affirmative evidence showing a dispute of material fact as to any of these elements. Accordingly, the Court must grant Defendant's Motion for Summary Judgment as to Plaintiff's 11 U.S.C. § 523(a)(2)(B) claim.

AO 72A
(Rev. 8/82)

### B.    11 U.S.C. § 523(a)(6)

In the third count of its Complaint, Plaintiff claims that Defendant's debt is non-dischargeable under 11 U.S.C. § 523(a)(6).[16]  Section 523(a)(6) states that an individual debtor may not be discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  The burden is on the creditor to prove this exception to discharge by a preponderance of the evidence.  Pioneer Const., Inc. v. May (In re May), 518 B.R. 99, 124 (Bankr. S.D. Ga. 2014) (citations omitted).  A "willful and malicious injury" under this subsection "is limited to acts, such as intentional torts, committed with an actual intent to cause injury as distinguished from acts taken intentionally that result in injury."   Washington v. Robinson-Vinegar (In re Robinson-Vinegar), 561 B.R. 562, 568 (Bankr. N.D. Ga. 2016).  "An act in reckless disregard of the rights of others is insufficient to constitute 'willful and malicious' conduct for the

---

[16] In support of its section 523(a)(c) claim, Plaintiff asserts that "[Defendant's] continued fraudulent and false representations to Plaintiff that [Defendant] and his affiliate's financial condition was shown and reflected in Financial Documents . . . represent a series of willful, malicious, and misleading acts of the [Defendant] which have caused injury to the Plaintiff."  (A.P. ECF No. 1 at 7.)  Plaintiff alleges that at all relevant times, Defendant knew the "Financial [Documents] and continued representations regarding [Defendant] and [Defendant's] affiliates were untrue and knew or should have known that Plaintiff would act in reliance upon such representations, yet at no time did [Defendant] ever inform Plaintiff that such was untrue" so that Plaintiff could avoid further injury.  (Id.)  Plaintiff alleges that Defendant "encouraged Plaintiff to act to Plaintiff's own detriment in reliance upon such representations" by encouraging Plaintiff "to spend large sums of money . . . solely for [Defendant's] gain."  (Id.)  Finally, in support of its section 523(a)(6) claim, Plaintiff asserts that at the time the Selma Lease was executed, Defendant "knew or should have known that neither [Defendant] nor [BAS] had any intent or feasible way to perform its obligations under the Selma Lease" (Id. at 8), and that by executing the Selma Lease, Defendant encouraged Plaintiff to enter into the lease and represented to Plaintiff that Defendant and BAS "could and would perform their obligations under the Selma Lease."  (Id. at 7.)

purposes of 11 U.S.C. § 523(a)(6)." <u>Am. Cast Iron Pipe Co. v. Wrenn (In re Wrenn)</u>, 791 F.2d 1542, 1544 (11th Cir. 1986); <u>see</u> <u>Hope v. Walker (In re Walker)</u>, 48 F.3d 1161, 1165 (11th Cir. 1995) (holding that "[o]perating without insurance is a clear example of recklessness," but it fails to meet the standard of willful and malicious conduct).

In arguing against summary judgment, Plaintiff states that "[f]or the reasons stated in Section I of this Brief, there are genuine issues of material fact as to Plaintiff's fraud claim against Defendant."[17]  (A.P. ECF No. 24 at 7.)  Section I of Plaintiff's Response discusses its section 523(a)(2)(B) claim.  (<u>Id.</u> at 3–7.)  Plaintiff also argues that "intent is a question of fact and therefore is not proper for summary judgment."  (<u>Id.</u> at 7–8.)  Plaintiff concludes that "Defendant is not entitled to summary judgment because the facts establish that [the debt owed to Plaintiff] represent[s] money, property, services, or extension of credit which were obtained by false representations and actual fraud as contemplated by 11 U.S.C. § 523(a)(6)."  (<u>Id.</u> at 8.)

Defendant argues that the Plaintiff's allegations as to its section 523(a)(6) claim are not supported by the record because there is no evidence that suggests Defendant committed any fraud or that any acts of Defendant resulted in willful or malicious injury to Plaintiff or Plaintiff's property.  (A.P. ECF No. 33 at 9–10.)    The Court agrees.

---

[17] The new allegations included in Plaintiff's Response are unsupported by the record and the Court will therefore not consider them.  <u>See</u> Fed. R. Civ. P. 56(c)(1)(A); <u>supra</u> note 15 and accompanying text.

Even if the Court assumes that Plaintiff has a breach of contract claim against Defendant,[18] courts have consistently held that a simple breach of contract claim, without more, cannot support an inference of maliciousness.  See In re Robinson-Vinegar, 561 B.R. at 569; see, e.g., In re May, 518 B.R. at 124 (explaining that simple breach of contract claims are insufficient to satisfy the requirements of 11 U.S.C. § 523(a)(6)).  Instead, unlawful conversion and misuse of funds have accompanied breach of contract claims that rise to willful and malicious injury under section 523(a)(6).  See PIP-Group, LLC v. Grimm (In re Grimm), No. 18-01021, 2019 WL 1472963 (Bankr. S.D. Ga. Mar. 27, 2019) (denying defendant's motion to dismiss where plaintiff alleged that defendant lied that he was a licensed contractor and did not use plaintiff's money to complete the contracts); In re May, 518 B.R. at 124 (holding that even a debt from a consent judgment wherein debtor was liable for willful conversion was insufficient to establish nondischargeability because plaintiff had no security interest in the converted funds); Marbella, LLC v. Cuenant (In re Cuenant), 339 B.R. 262 (Bankr. M.D. Fla. 2006) (refusing to find willful and malicious intent even where debtor used loans from investors for personal expenditures because debtor believed he would timely repay the loans).  Plaintiff does not allege—and the record does not support—conversion or misuse of funds in this case.

---

[18] This Order does not make any findings or conclusions as to whether Plaintiff does, in fact, have a valid breach of contract claim against Defendant.

Moreover, even *if* Plaintiff had established a fraud claim,[19] Defendant must have "committed fraud willfully and maliciously" and "the resulting injury [must have been] intentionally willful and malicious" for recovery under section 523(a)(6). Eden v. Eden (In re Eden), 584 B.R. 795, 809 (Bankr. N.D. Ga. 2018). "Interpreting [section] 523(a)(6) to cover any or all injuries resulting from fraud that was committed willfully and maliciously would render [section] 523(a)(2) completely superfluous." Id. (citing IndyMac Bank, F.S.B. v. Mitchell (In re Mitchell), No. 04-6555, 2005 WL 6487215, at *4 (Bankr. N.D. Ga. Aug. 16, 2005)).

Plaintiff has not alleged facts that qualify as "willful and malicious" for the purposes of 11 U.S.C. § 523(a)(6). Its allegations that Defendant knew he could not perform under the lease, that Defendant encouraged Plaintiff to act to its own detriment, and that Defendant made false representations to Plaintiff are all unsupported by the record. See Anderson, 477 U.S. at 257 (requiring "affirmative evidence . . . to defeat a properly supported motion for summary judgment"); K.A.P., Inc. v. Hardigan (In re Hardigan), No. 12-40484-EJC, 2016 WL 1212767, at *7 (Bankr. S.D. Ga. Mar. 28, 2016) (granting debtor/defendant's motion for summary judgment as to 11 U.S.C. § 523(a)(2) claim where there was "no evidence in the record" as to fraudulent intent); In re Lam, 2008 WL 7842072, at *4 (granting debtor/defendant's motion for summary judgment as to 11 U.S.C. § 523(a)(6)

---

[19] This Order also makes no findings or conclusions as to whether Plaintiff has a fraud claim against Defendant.

claim where "[p]laintiff offer[ed] no evidence" of intent or substantial certainty to cause injury).   But even if Plaintiff's allegations were true, they would be insufficient for its section 523(a)(6) claim.  Acts that qualify as willful and malicious are those where debtors intend or fully expect to harm the creditor.  <u>Thompson v. Barbee (In re Barbee)</u>, 479 B.R. 193, 208 (Bankr. S.D. Ga. Sept. 25, 2012) (citing <u>Barclays Am./Bus. Credit, Inc. v. Long (In re Long)</u>, 774 F.2d 875, 881 (8th Cir. 1985)); <u>see</u> <u>Haramis v. Mitchell (In re Mitchell)</u>, No. G05-21370-REB, 2007 WL 7143084, at *3 (Bankr. N.D. Ga. July 25, 2007) (granting summary judgment for plaintiff on 11 U.S.C. § 523(a)(6) claim where debtor struck plaintiff in the eye with his fist multiple times); <u>Henderson v. Woolley (In re Woolley)</u>, 288 B.R. 294, 303–04 (Bankr. S.D. Ga. 2001) (granting summary judgment for plaintiff on 11 U.S.C. § 523(a)(6) claim where debtor physically and sexually abused plaintiff).  Because Plaintiff presented only conclusory allegations and unsupported speculation, Plaintiff's contention that Defendant acted willfully, maliciously, or fraudulently is without merit.  Plaintiff has failed to satisfy its burden of proof under 11 U.S.C. § 523(a)(6) and summary judgment must be granted in favor of Defendant.

## <u>ORDER</u>

Based on the above discussion, the Court concludes that Plaintiff has failed to establish that the debt in question is nondischargeable as a matter of law.  Accordingly,

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (A.P. ECF No. 18) is hereby **GRANTED**; and

AO 72A
(Rev. 8/82)

**FURTHER ORDERED** that the indebtedness of Defendant to Plaintiff, based on the consent judgment (see Claim 3-1 at 4) entered by the Superior Court of Columbia County, Georgia, in the amount of $1,500,000.00 is dischargeable and the dischargeability of the same is not denied by reason of the provisions of 11 U.S.C. § 523(a)(2)(B) or 11 U.S.C. § 523(a)(6).

Michele J. Kim
United States Bankruptcy Court
Southern District of Georgia

Dated at Brunswick, Georgia,
this 31st day of March, 2020.